Taylor, Chief Justice.
 

 The question presented by the record is, whether the levy of a
 
 Fieri Facias
 
 upon land, of which a person is in possession, under a title not controverted, shall so operate, as to deprive his widow of dower, although the sale is made after the death of the husband ?
 

 The act of Assembly entitles the widow to be endowed of all the lands, of which her husband died seised, or possessed; but the latter term being ambiguous, and not necessary to be defined in the decision of this question, the enquiry may be more directly pursued, by considering, whether the title of the owner is evicted, by the levy of the execution ? 1 cannot conceive upon what principle, so important an effect can be attributed to the levy of
 
 afi-fa.
 
 when it is the received, and established law, that it does not change the possession; for the sheriff cannot turn the Defendant out of possession by force of the levy; nor can he after a sale and deed, deliver the
 
 *31
 
 actual possession to the purchaser; he can only deliver the legal possession: and if the Defendant will not vol- , , , untarily relinquish it, the purchaser must resort to an ejectment. To invest the sheriff by implication, with the power to turn the Defendant, and his family, out of doors, by virtue of a levy, seems to be as unfounded in principle, as it would be oppressive in practice.
 

 For how can we suppose a disseisin to be effected by the levy, without assuming a seisin in some other person ? In whom shall it be considered, in contemplation of law
 
 l
 
 Not in the sheriff’, for he has not the
 
 scintilla
 
 of
 
 right;
 
 not even so much, as to enable him to bring an action of trespass against one, who entered on the land after the levy : the right of ownership could be asserted only by the Defendant. The writ does not authorise the sheriff to break open the dwelling-house, to seize even the goods of the Defendant, for this sanctuary, of the man and his family, cannot be violated. 2
 
 Show. 87.
 
 Much less does it permit him to break open the house, for the purpose of possessing himself of the land. Not in the Plaintiff in the judgment; for even in goods seised, lie has neither interest, property, or possession, by force of the levy, and can maintain no action against a trespasser who takes them away, his only remedy being against the sheriff. The Plaintiff’s right, both in chattels and land, is confined to the money which may be raised on the sale of them i — to the lien from the teste of the execution, so as to entitle him to a priority if he sells under
 
 it;
 
 and to bind the property, of whatever nature, as against the party Defendant himself, and all claiming by assignment from, or representation through, or under him.
 

 There is then no person in whom the seising can vest, if it is divested from the Defendant; nor can it be considered as in custody of the law, and in abeyance. Against the freehold’s being in abeyance, the policy of the law, both ancient and modern, whether derived from the
 
 *32
 
 feudal system, or from a principle directly adverse to the. genius of that institution, viz. to facilitate the alienafioa of land, — hath placed insuperable bars. It is an estab-j¡s¡ie(j ru]ej that the freehold cannot be in abeyance, although with respect to the inheritance, it is sometimes admitted from necessity. But it cannot be done by the act of the party, and, for this reason a freehold particular estate, is necessary to support a remainder of the same degree.
 
 Hob.
 
 153. The fee can be in abeyance only to the intent, that another, previously designated, may have it afterwards. As in the case of a lease for life, the remainder to the right heirs of the body of A, who is alive, there the entail shall be in abeyance until the death of A, and then it shall vest in his issue, because it could not vest before; and to the purpose of vesting afterwards, it shall be in abeyance. But to make that to pass out of one, which shall never vest in another, is altogether incompatible with the design of the law, in allowing things to be in abeyance.
 
 Plowden
 
 556. It is, besides, in direct conflict with the cautious policy of our law, in the solemn forms it prescribes, for the transmutation of freehold estates, to invest one of the slightest, and most undefined acts, a ministerial officer can perform, with the tremendous effect of divesting the freehold right of a man in possession. I cannot give my sanction to the principle, that the sheriff’s endorsement of half a dozen words upon an execution, shall be allowed to cut up by the roots, the debtor’s right to his
 
 freehold;
 
 nor to ascribe to that officer, a plenitude of authority, over the property of the citizens, which is unknown to the constitution, and the laws, in any other
 
 instance;
 
 and is, in all respects, adverse to the spirit of our institutions.
 

 The language is intelligible, (or if we doubt, our books will furnish the necessary information,) when we are told, that a man may be deprived of his freehold by his
 
 *33
 
 own solemn act, executed in his life-time; — by a disseisin and a descent cast; — by an adverse possession, under colour of title, for seven years; — by the verdict of a jury, disaffirming his title in a suit brought to try it— or by a sheriff’s deed, in pursuance of an execution ; but I know of no case, adjudging, after argument, that a levy of an execution is another mean of divesting the seisin.
 

 When we examine the reasons, wherefore the law considers chattel property to be vested in the sheriff to a certain degree, by the levy of
 
 & Ji.Ja.
 
 it will be seen, that they bear no application to freehold estates, and consequently cannot produce similar effects. Although the statute of 5
 
 Geo.
 
 2, which first made land in the colonies liable to be sold for the payment of debts, enacts “ that they shall be liable in like manner as personal estates are seised, extended, sold or disposed of absolutely, so as to pass the whole interest of the debtor to the purchaser;” yet laws must be construed in accordance with the rules, and principles, growing out of the existing, and unalterable, nature of things.
 

 When personal chattels are levied upon by the sheriff, under an execution, the debtor is discharged to the amount of their value, for which the. sheriff is accountable to the judgment creditor; nor does any claim exist against the Defendant, although the sheriff waste the goods, or fail to return the execution. The debtor has lost the special property of the goods, which the sheriff may, at once, take into his possession, as well to render the levy effectual, as to secure himself against the claims of the creditor. And by virtue of the special property thus acquired, the law arms the sheriff with authority to maintain trover, or trespass, against a wrong doer, that he may be enabled to meet his responsibility to the creditor.
 

 But in relation to lands, they will be more safely kept in the Defendant’s possession, than in that of the sheriff: they cannot be secreted, rescued, or removed: the debtor
 

 5
 
 
 *34
 
 cailiiot by any act of his, transfer the title, discharged the lien arising from the
 
 teste
 
 of the
 
 execution;
 
 nor will so much of his debt as the land is worth, be disebarg- ^ ¡.¡ie ]evys for the sheriff has no power to protect it from aggression, nor is be,responsible to the creditor.
 

 Chattels are transferable at common law, by delivery 5 they may be taken away into the sheriff’s custody, the moment be makes the levy ; and if they are expensive in keeping, the law has made sundry provisions for the indemnification of the sheriff. But, conventional estates of freehold can pass only by deed j and it is difficult to understand, how, in the language of the statnte of
 
 Geo.
 
 2, lands “can be seised in like manner with personal estates,*” and not less so to perceive, bow, consistently with our act of 1715, c. 7, the debtor became disseised by the levy ; for it is a rule of the common law, that where seisin of an inheritance is once alleged, it shall always be intended to continue till the contrary be shewn.
 
 Sir
 
 T.
 
 Jones,
 
 182,
 
 Cockman
 
 v. Farrer. Seisin is also fa-voured in equity. Gro. &
 
 Rudim. of Law and Equity,
 
 66,
 
 rule
 
 96.
 

 These views of the subject induce me to believe, that the levy on the land has,
 
 per se,
 
 no other operation than to fix upon that particular tract, as the subject, from which, the sum claimed in the execution, is to he raised
 
 •,
 
 that, the security of the creditor is founded on the
 
 teste
 
 of the execution, and derives no aid from the
 
 levy;
 
 and that even the benefit of this, may be lost by the sale of the land, under an execution of a posterior
 
 teste,
 
 as was admitted by this Court in the case of
 
 Green
 
 v. Johnson, 3
 
 Hawks,
 
 309.
 

 .It is urged on the part of the Defendant, that the sale of the land, after the death of the debtor, has relation to the levy or
 
 teste,
 
 and, thus, evicts the seisin out of him from that time, and that, consequently, he did not die seised. There are some general rules touching the doctrine of relation, which it may he useful to examine in
 
 *35
 
 the first place. It is a fiction of law, intended to sub-serve the ends of justice, and will not be tolerated where . ... ... , . it tends to injustice; nor will it apply m,any case, ex-ccpt between the same pa'rties, and for the same ends; but it shall never work a wrong to strangers, or defeat collateral acts, which are lawful.
 
 IS Go.SI,
 
 The same author in his
 
 8d Rep.
 
 29, states it as a general rule, that relations shall extend only between the same parties, and shall never he strained to the prejudice of a third person who is not party, or privy, to the act. I shall presently state the reasons why this appears to me, to apply exactly to the widow’s claim, and that she was neither, party, nor privy, to the act, which is set up to defeat her dower.
 

 I will select a few of the illustrations of this general rule. Where a person is disseised, the disseisee, after re-entry, can maintain trespass against the disseisor; for the law as to the. disseisor and his servants will suppose the freehold to have continued in the disseisee; but not so with respect to strangers who come in by right or title under the disseisor; they cannot bo made trespassers by relation.
 
 Lifford’s case,
 
 11
 
 Co.
 
 51.
 

 Before the enabling statute, the grant of a Bishop was not good beyond bis own life, without confirmation of his chapter; and if the confirmation was not. till after his death, it came too late, and the successor was not bound.
 
 Fitzh. Mr. Tit. confirmation, Pl.
 
 22. Entry by feoffee on livery within the view is too late, if postponed till after the death of the feoffor.
 
 Godb.
 
 25. Livery of •seisin, which is necessary to consummate the conveyance by feoffment, cannot be made effectually after the death of the feoffer. Ziff.
 
 sect.
 
 66 ; for, says
 
 Littleton, “
 
 after the decease of him who made the deed, the right of these tenements is forthwith in his heir, or in,some other.” — •
 

 This reason is applicable to this case; for it shows that in
 
 Littleton’s
 
 opinion, a conveyance to be effectual, must be consummate in the life of the grantor, and that the
 
 *36
 
 consummation comes too late, when the estate is vested in a third person. So while attornment was necessary 1
 
 J
 
 to the perfection of a grant, if it was not made in the me 0f the grantor, the grant was void ; and this doctrine of
 
 Littleton, sec.
 
 551, is confirmed by Lord
 
 Coke
 
 in his comment, who states the reason to bo, that every grant must take effect as to the substance of it, in the life both of grantor and grantee. So in an exchange made according to the forms of the common law; to perfect which, entry is essential, if either party dies before, it cannot be made effectually afterwards.
 
 Co. Litt.
 
 52 b.
 

 If the sale relates to the levy, I have stated the reasons which satisfy me, that in the case of land levied upon, it relates to an act of very little consequence or legal operation. If it relates to the
 
 teste,
 
 it connects itself with an act, the only effect of which is to give the creditor a contingent priority to raise his money from the property levied upon; and to invalidate any transfers made by the debtor after that period. But neither act impairs, or subverts, the debtors seisin, for before his death he was a freeholder, to all the intents, and purposes, for which that qualification is required by our law.
 

 But l know' of no case where relation is relied on, to aid by its fiction, an act of the party in destruction of a title conferred by law; and the rule is expressly stated in 3
 
 Co.
 
 29, “that though relations aid acts in law,
 
 as Dower,
 
 yet they will never aid the acts of the parties, that is to say, to make void acts of the parties good, by fiction or relation of la\v j” and hence, thinking the sale of this land was a void act as to the widow, whose title to dower was complete by the death of the husband, it cannot be made good by relation to the levy, or teste.— The cases of bankrupt too cited at the bar, show that the title of the assignees shall not be overreached by the relation of an execution, because the title is conferred by law.
 

 Before the act of 1784, c. 204, sec. 8, the widow was dowabie of all the lands of which her husband was seised
 
 *37
 
 in deed or in law during the coverture; and upon the assignment of dower she held, it discharged from all judgments, leases, mortgages, or other incumbrances, made or created by her husband after the marriage; and the reason given is, because, upon the husband’s death, the title of the wife being consummate, has relation back to the time of the marriage, and to the seisin which her husband then had, both of which precede such incum-brances,
 
 Co. Litt.
 
 46
 
 a.
 
 4
 
 Rep.
 
 65
 
 a.
 
 Our act has limited the right of dower, to such lands as her husband died seised
 
 of;
 
 hut these are to be assigned to her, in as full right, as if the rest which she had aliened, had not been stript from her dowry. As to what is left to her, she should be entitled to them in
 
 pleno jure;
 
 and I can see no reason why she should not be entitled to the benefit of the relation, in a degree at least corresponding to the curtailed nature of her claim. Then, as to the land of which her husband died seised, his death having consummated her right of dower in them,
 
 that
 
 should have relation back to the time of marriage, and to that period of her husband’s seisin, which preceded arty incumbrance short of an actual disseisin, or transfer of the title. This construction would place her with regard to this tract of land, in the situation in which the act found her, with respect to all the land, of which her husband was seised during the coverture. This is a relation in maintainance of right and j'ustice, founded in reality and not in fiction,
 
 Hob.
 
 222, and overreaches in its operation the
 
 teste
 
 and levy of the execution.
 

 We have the warrant of the law for giving the widow's claim a liberal construction, for it is transmitted to us, as a maxim, that the law favoureth three things, life, liberty and dower,
 
 Bac. on uses ;
 
 and modern wri ters have shewn that the legal right is founded on a moral obligation on the part of the husband, to provide for his wife not only during coverture, but after his death
 
 ;
 
 because, during coverture, she can acquire no property
 
 *38
 
 0f her own, and what she has at the marriage belongs to her husband either absolutely or during the cover
 
 tu
 
 re. 2 P. Wms. 702.
 

 _^s j0 (|ie vv[fc being bound by the relation of the execution, because she is privy in estate, that is answered •by‘the act of
 
 179-1 c.
 
 351, which prefers her claim to that of the creditors ; for although after the assignment, of dower she is
 
 in
 
 from her husband and not from the heir, to whom her claim is paramount, yet the husbands estate continues in her, discharged of his debts, and all other incumbrances provided he died seised. When it is ascertained that she has the right of dower, that right must devolve upon her, both by the common law, and our act of Assembly, pure and untrammelled. The Plaintiff in the judgment cannot be viewed in any other light than as a creditor
 
 ;
 
 his lien on the land is absorbed by an anterior right so far as it respects the widow, and it remains on that portion of the land only which descended upon the heir.
 

 Whilst I acquiesce in the wisdom of that policy which removed the restraints upon the alienation of real estates, it must be allowed that a very helpless part of the community has been made to sacrifice in an undue proportion towards its establishment; and, this is, perhaps, a reason why the pittance that remains to the Widow should be protected from reasonings and analogies, which have indeed a salutary reference to chattels personal, but the application of which, to real property, is not so distinct, and palpable. It might naturally have been expected, that difficulties would arise from the application of a species of process to lands, which has been introduced, and used for centuries, solely for the seizing and disposition of chattels, in relation to every step of which, rules and principles have been established by a series of adjudications. S venture to think, that much' of our difficulty here, has proceeded from an indiscriminate adoption of these decisions, without marking the inherent and fun-
 
 *39
 
 da men tal difference between the two species of property. Upon the whole case my opinion is, that the widow is entitled to dower.
 

 HeNdeiisoN, Judge.
 

 A lory made on lands under a
 
 fieri facias,
 
 (if it can be called a levy.) docs not divest even the possession of the Defendant, much less does it vest his estate in the sheriff: and he who purchases at a sheriff’s sale, comes to the estate under the Defendant, and not under the sheriff. The sheriff is no more than an
 
 agent
 
 constituted by law to transfer the Defendant’s estate to the purchaser; his transfer does not interfere with the rights of others; he can only convey the estate which the Defendant had, at the time of the transfer, with a relation to the
 
 teste
 
 of the execution in certain cases, for reasons peculiar to such cases: in the case of the heir, because he is a mere volunteer and comes to the estate in representation of the debtor j. in tiie case Of a purchaser from the Defendant, because it is a presumption of law, that such purchase was fraudulent as to the execution creditor, and, if so, it is the estate of the Defendant as to such creditor, and the purchaser at his execution sale succeeds to his right. But there is no relation as to the wife; she claims the estate not as representing the husband, but in her own right, and as a purchaser by the operation of law, and to her acquisition no fraud can be imputed. It is supposed, because the purchaser at the execution sale, can defeat him who purchases from the husband after the
 
 teste,
 
 and the latter can defeat the widow, where the husband dies after the
 
 teste,
 
 — that the purchaser at the execution sale, has a title preferable to that of the widow; and so it would be, if the wife’s estate could be impeached on the ground of fraud ; that is, if it was presumption of law, that the death of the husband was designed to defeat the execution, as it is the presumption that a sale or transfer made by a debtor after the
 
 teste
 
 of the execution was so de
 
 *40
 
 signed. In the contest, therefore, between the purchaser j|ie gaje lin(jer execution, and the purchaser from * the Defendant, the title of the latter is impugned on the groun(j 0f fraud, which cannot be urged against the widow’s title. But in the contest between the widow and the purchaser from the husband, the widow,
 
 not claiming under the execution,
 
 cannot impute fraud to the purchaser from the husband j for this presumption of fraud extends only to the protection of those who daim under the execution.
 

 It is admitted, that if it be shewn that A is superior to B, and that B is superior to C, it is thereby shewn, that A is superior to C. But it is denied, that if it be shewn that A is superior to B in
 
 strength,
 
 and that B is superior to C in
 
 skill,
 
 it is thereby shewn that A is superior to C in either.
 

 There is a clear application of these principles in cases of Bankruptcy. It is universally admitted that if a trader, after the test of a writ of execution, and after a levy, commit an act of bankruptcy, the whole of his property becomes vested in the Commissioners of Bankruptcy, and passes to the assignees. Under the words of the statute “
 
 all his
 
 property,” the execution creditor looses his lien arising from the levy: the relation to the test has no effect, because the commissioners came to the estate by act of law, and therefore, fraud cannot be imputed to them; for Bankruptcy is considered in law as an involuntary act. These cases, in principle, I think, cannot be distinguished: the wife comes to her estate by act of law, the death of her husband not being considered a voluntary and fraudulent transfer to defeat the execution creditor. The wife’s title, therefore, being
 
 bona fide,
 
 and prior in point of time, must prevail against the purchaser under the execution. I have felt great delicacy in pronouncing this opinion, for it overrules a decision of this Court, made without argument, (a decision in which I concurred,) and founded on one made by Judge Hat
 
 *41
 
 wood, from which it was said, however, that Judge "Wiixiams dissented. I have therefore forborne to express it for more than twelve months after I had formed it j but a sense of duty compels me to forbear no longer. I therefore concur in opinion with the Chief Justice, that the Judgment of the Superior Court be reversed, and that Petitioners receive dower in the lands mentioned in the petition, and that this cause be remanded with such instructions.