1. That on 27 November, 1865, one William H. Hughes was the owner in fee simple of the land, with the improvements thereon, mentioned in the pleadings, and being in possession of the same conveyed it by a deed proper in point of form to his brother Thomas C. Hughes and his heirs; that the consideration recited therein was the sum of $5,000, alleged to have been paid by the said grantee to the said grantor; (64) that at the time of the execution of the said deed the said grantor was indebted to various creditors, in amounts much larger than the value of his property, and that he was utterly insolvent; that no part of the said consideration of $5,000 was paid, or was intended to be paid by the said grantee to the said grantor, and that the said deed was executed solely for the purpose of saving the land therein mentioned for the benefit of the grantor's family, at the expense of his creditors, by preventing its being applied to the payment of their debts; that this deed was duly proved and registered.
2. That at the June Term, 1866, of the Circuit Court of the United States for the fourth Circuit in the District of North Carolina, H. B. Loney Co., citizens and residents of the city of Baltimore and State of Maryland, obtained a judgment against the said William H. Hughes, a citizen and resident of the State of North Carolina, for the sum of $1,960.12, due 28 December, 1865, subject to a credit of $100, paid 28 January, 1866, and for costs, also for three per cent additional damages on the principal sum, which said judgment was obtained on a bill of exchange drawn at Baltimore on 28 October, 1865, and payable sixty days after dated and accepted by the said William H. Hughes. *Page 48 
3. That upon the said judgment a writ of fieri facias was duly issued from the said Court on 18 July, 1866, tested of the said June Term, 1866, and returnable to the ensuing November Term thereof, which said writ was returned by the Marshal of the United States for the District of North Carolina, to whom it had been directed, with an endorsement that on 9 November, 1866, it was levied upon the land mentioned in the present pleadings; and thereupon a writ of venditioni exponas was issued from the said Court on 29 December, 1866, directed to the said Marshal, and commanding him to sell the said land, which said writ was made returnable to the June Term of the said Court 1867, (65) that by virtue of the said writ, the said Marshal duly exposed the said land for sale at auction, when it was bid off by Joseph B. Batchelor, Esq., for the sum of $16, of which a due return was made by the said Marshal; that this sale was made 6 May, 1867, the said Batchelor bidding for his clients the plaintiffs in the judgment, and that with their consent, he, on 20 January, 1869, transferred in writing his bid to the present plaintiff, Isaac J. Young, to whom the said Marshal, on the said 20 January, 1869, executed a deed which was afterwards duly proved and registered.
4. That on 24 October, 1866, the said Thomas C. Hughes, the grantee, as hereinbefore stated, of the said William H. Hughes, by a deed duly executed, reciting a consideration of $7,000, conveyed to the defendant, Richard D. Lathrop, of the city and State of New York, and his heirs, the same land, which deed was duly stamped, proved and registered; and on the same day the said William H. Hughes executed to the said Richard D. Lathrop and his heirs a quit claim deed for the same land, which has not been either stamped and proved or registered. That at the time when the said deeds were executed, the firm of Lathrop, Luddington Co., of which the said Richard D. Lathrop was a member, had claims against the said William H. Hughes amounting to $9,998, for which the said Thomas C. Hughes, and also George B. Hughes and George Badger Harris, were bond as sureties; and the said deed from the said Thomas C. Hughes to the said Richard H. Lathrop was given in part payment of the said claims, with the interest due thereon. Whether the said deed from Thomas C. Hughes to Richard D. Lathrop was executed bona fide, and without any notice, to the grantee, of the judgment against the said William H. Hughes in the Federal Court as hereinbefore mentioned, and also without notice of the alleged fraudulent conveyance from William H. Hughes to his brother (66) Thomas C. Hughes, hereinbefore mentioned; and also whether the said deed was intended to be absolute or only a mortgage, are matters *Page 49 
in which the testimony is conflicting. * * * After a careful consideration of all the testimony I find the facts to be, that the defendant was a bonafide purchaser of the land in question for a valuable consideration, without notice of the aforesaid judgment in the Federal Court, and of the fraud in the execution of the said deed from William C. Hughes to his brother Thomas C. Hughes. I further find that the deed from Thomas C. Hughes to the defendant, Lathrop, was an absolute one to him and his heirs, and was not, nor was it intended to be, a mortgage.
5. That the evidence of debt which formed the consideration of the deed of the said Thomas C. Hughes to the defendant, were founded on a legal consideration, and were sufficient for the purposes of the said conveyance from the said Thomas C. Hughes to the defendant, providing the said Thomas C. Hughes had, as against the creditors of the said William H. Hughes, the right to make the conveyance, I find, as conclusions of law:
1. That the deed from the said William H. Hughes to the said Thomas C. Hughes, mentioned in my finding of the facts, was and is a fraud upon the creditors of the said grantor, and is, therefore, null and void as to them.
2. That the land mentioned in the said deed of conveyance, notwithstanding the formal execution of the same, remained, as to the creditors of the said William H. Hughes, his property, and that the writ offieri facias which was issued on the judgment of F. B. Loney Co., obtained at the June Term, 1866, of the Circuit Court of the United States for the District of North Carolina, which said writ was tested of the said term and was levied on the said land, was a lien on the same from the date of its teste, and the purchaser of the said land at the sale made by the Marshall, under the venditioni exponas issued from the November term of the said Court, obtained thereby a good title to the same.
3. That the attorney of the plaintiffs, in the said judgment, who bid off the land for them, had the right, with their consent (67) to transfer his bid to the plaintiff in the present action, and the deed from the Marshal to him gives him a good title to the said land. And I therefore direct judgment to be entered for the plaintiff.
1. That he recover the land mentioned in the pleadings.
I direct further:
2. That judgment be entered for the plaintiff, that he recover, as damages for the detention of the said land, at the rate of $200 per annum
during the time of such detention, making the sum of $850.
WILLIAM H. BATTLE, Referee. *Page 50 
Upon the return of this report, the defendant, by M. V. Lanier, Esq., his attorney, filed the following exceptions, to-wit:
The defendant excepts to the report of the referee, returned to the present term of the Court, for error in his conclusions of law upon the facts found by him as set forth in his report, in the following particulars, to-wit:
1. That the said referee concludes that, notwithstanding the deed from William H. Hughes to Thomas C. Hughes, the land remained the property of William H. Hughes as to the creditors of the latter, whereas he ought to have concluded that said deed was good as between the said parties, and voidable by and as to the creditors of the said William H. Hughes, and that as to said Richard D. Lathrop, the bona fide purchaser for value without notice, said deed was good as against the creditors of said William H. Hughes.
2. That the said referee concludes that the writ of fieri facias of Loney Co. was a lien on the land from the date of its teste, whereas he ought to have concluded that the same was not a lien as against the said purchaser from Thomas C. Hughes, or, if a lien, it did not affect the said Richard D. Lathrop, purchasing as aforesaid.
3. That the said referee further concludes that the purchaser of (68) the said land, at the sale by the Marshal, in said report mentioned, obtained a good title thereby to the said land, whereas he ought to have concluded that the said purchaser did not thereby get a good title as against the said R. D. Lathrop.
4. That the said referee further concludes that the attorney of the plaintiff in the judgment had the right to transfer his bid to the plaintiff in the present action, and that the deed from the Marshal to him gives him a good title, whereas he ought to have concluded that the said attorney had no such right at the time when the said transfer was made, and the said transfer was void, and that the deed of the said Marshal did not give the present plaintiff a good title.
5. That the said referee ought to have concluded, that in law, upon the facts stated in his said report, the said R. D. Lathrop, by his deed from the said Thomas C. Hughes, obtained a good title to the said land, and that the plaintiff in the present action is not entitled to recover.
Wherefore, and for divers other errors in law appearing in said report, the said defendant doth except to the same, and moves the Court to review said report and modify the same in respect of the error aforesaid, and to give judgment thereupon in favor of the defendant.
M. V. LANIER, Atto. for Def't. *Page 51 
Upon hearing and consideration of the exceptions to the report of the referee, his Honor, Judge Watts, overruled them, and then, upon the motion of the plaintiff's counsel, confirmed the said report and gave judgment, as therein directed, for the plaintiff, from which the defendant prayed and obtained an appeal to the Supreme Court.
The point is this. A debtor makes a voluntary deed of land for the benefit of himself, with an intent to defraud his creditors. Afterwards a creditor takes out execution upon a (69) judgment against the debtor for a pre-existing debt and puts it into the hands of the Marshal. Afterwards the fraudulent grantee, for a valuable consideration and a full price, makes a bona fide sale, and executes a deed to the defendant for the land, the defendant having no notice of the fraud and covin between the debtor and the grantee.
This sale and deed were subsequent to the teste of the execution. Afterwards the Marshal sells under the execution, and the plaintiff becomes the purchaser and takes the deed of the Marshal. Which has the title? the defendant who was the first to purchase and take a deed from the grantee, or the plaintiff who purchased under an execution the teste of which was prior to the defendant's purchase?
It is settled, without any conflict of the authorities, that a purchaser of a fraudulent donee, bona fide and for a valuable consideration at a full price, without notice of the fraud, acquires a good title under 27 Eliz., against a subsequent purchaser of the donor, bona fide and for valuable consideration at a full price.
It is also settled, but after some conflict of the authorities, that a purchaser of a fraudulent donee, bona fide, and for a valuable consideration at a full price, without notice of the fraud, acquires a good title under 13 Eliz., against creditors, and purchasers under their execution for a debt existing a at the time of the fraudulent conveyance, at a sale subsequent to the sale of the fraudulent donee. For both of the purchasers are bona fide for valuable consideration, and the one to whom the first sale was made is preferred, under the maxim — "priorest in tempore, portior est in jure." Roberts on Fraudulent Conveyances, 392, 462, and the cases there cited. Anderson v. Roberts, 18 Johnson, 515;Brace v. Smith, 2 Mason 252. The dictum of Ruffin, Judge, in Hoke v.Henderson, 14 N.C. 12, is put on the ground of unfairness to the creditors of the fraudulent donor. He gives no weight to the proviso (70) *Page 52 
in favor of bona fide purchasers, and after setting out the argument on the side of the creditors, waives a discussion, "because the point is not presented by the facts of the case, for the land was sold under the execution against the donor, before the sale on the side of the fraudulent donee."
This question is put at rest by Rev. Code, ch. 50, secs. 1, 2 and 4; for the proviso (which will be again referred to), applies to sec. 1 which is 13 Eliz., and also to sec. 2, which is 27 Eliz. Whatever may be said about fairness or unfairness towards creditors, the Legislative will gives preference to a bona fide purchaser, for valuable consideration at fullprice and without notice of the fraud and covin. In our case the plaintiff says he is taken out of the operation of this maxim, by the effect of the teste of the execution under which he claims title; for the execution relates back to the teste, and gives to the creditor a lien on the property of the debtor, which lien is prior in point of time to the sale of the fraudulent donee to the defendant.
The case turns upon this point. No direct authority was cited. In Bracev. Smith, sup., at p. 279, Justice Story, after denying the distinction, between the operation of the 27 Eliz. and the 13 Eliz., in respect to bonafide purchases for valuable consideration without notice, says, "I have searched with some diligence to ascertain if that distinction has been recognized in any adjudged case or in any elementary treatise in England. Hitherto my researches have been unsuccessful. In Wilson v. Womal, Godbolt 161, however, Lord Chief Justice Coke, than whom no man was probably better acquainted with the statute in its true construction, lays down a doctrine that in terms denies the distinction. He says that, "If lessee for years assign one his term by fraud to defeat the execution (upon a judgment against him), and the assignee assigneth the same unto another bona fide, that in the hands of the second assignee it is not liable to execution."
Godbolt's reports are not in our library, and we are not able (71) to see certainly, from this extract, that the execution bore teste before the bona fide assignment; but we infer the execution was in the hands of the sheriff, from the words "assign one his term by fraud to defeat the execution (upon a judgment against him)." If so, this is a direct authority for the position that a bona fide sale of the fraudulent donee, although after the teste of the execution, passes a good title to the purchaser against the creditor, and a purchaser at a sale under the execution subsequently made.
Let us see how the question stands, "on the reason of the thing." A lien
does not vest the title in the creditor, but leaves it in the debtor until *Page 53 
a levy and seizure in respect to personal property, and until the sale under the execution in respect to land. This is settled. Frost v.Etheridge, 12 N.C. 30.
The effect of a lien is merely to tie up the land in the hands of the debtor, so that he can not, either by a voluntary conveyance or by a conveyance for valuable consideration, deprive the creditor of his right to have the land sold for the satisfaction of the execution. So, the lien created by a lis pendens does not divest the title, but merely ties up the property until the determination of the suit. In our case, before the teste of the execution, the debtor had passed the land to the donee, and although the conveyance was fraudulent, still it effectually passed the title and was valid as between the donor and donee. So, when the execution issued it had nothing to operate on, for the debtor had nothing and the lien created by the teste could not take effect as to him, and it could not take effect on the land in the hands of the donee, except by force of the 13th Eliz., which makes the conveyance void as to creditors. If the donee had retained the land until it was sold under the execution, as the property of the donor in respect to his creditors, the purchaser would have acquired a good title. But the donee did not retain the land, but sold it to the defendant, who was a bona fide purchaser for valuable consideration, at a full price, and without notice of such fraud, before it was sold under the execution; and the defendant insists (72) that he is protected by the proviso in the statute, 13 Eliz., which has the effect to make the first section inoperative, and to render the original conveyance valid as against creditors in favor of such bona fide
purchaser, and if so the creditor could acquire no lien, for the debtor had parted with the land, and in respect to the bona fide purchaser the conveyance was valid, both in regard to the debtor and his creditor. In other words, if the purchaser comes within the proviso, that takes from the creditor all benefit which he would otherwise have had under the first section.
The proviso is in these words (sec. 4, ch. 50, Rev. Code): "Nothing contained in the foregoing sections shall be construed to impeach or make void any conveyance of any lands bona fide made upon and for good consideration to any person not having notice of such fraud."
It it settled that good consideration means valuable consideration, or a fair price. We can see nothing to take the conveyance to the defendant out of the operation of this proviso, or any principle upon which it can be impeached or made void in the face of these express terms. The proviso can only be made operative by giving to it the scope and effect of purging the original conveyance of the fraud with *Page 54 
which it was tainted, by allowing the bona fides and the full valuable consideration of the second conveyance to supply the want of these qualities in the first, so as to perfect the title of the bona fide
purchaser, by carrying it back to the donor and claiming the title from him, and thus prevent the title of the first purchaser from being "impeached and made void." When the plaintiff says, "My title goes back to the teste of the execution under which I claim," the defendant replies, "My title goes back to the original conveyance made by the debtor which is purged of the fraud of which I had no notice;" and when the plaintiff says,
"The first section makes all conveyances made in fraud void as (73) to creditors," the defendant replies, "The 4th section makes my title good, and declares that nothing contained in the first section shall be construed `to impeach or make void my title.'"
It was said on the argument, "This effect given to the proviso will defeat the object of the act, which was to protect creditors," for debtors will make fraudulent deeds on purpose to enable donees to sell and defeat creditors. That may be so; but the object of the proviso evidently is to protect bona fide purchasers, and when the question is, shall the creditor lose his debt of the bona fide purchaser his money, the proviso gives the preference to the purchaser. The result is, that the first bona fide
purchaser, whether under the donee or under the exception against the donor, acquires the title.
The judgment below is reversed upon the facts found by the referee.